UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSEPH McDANIELS, | Case No. C10-823-MJP-JPD |
| Plaintiff, | REPORT AND RECOMMENDATION |
| v. | |
| HENRI FISCHER, et al., | |
| Defendants. | |

I.      INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Joseph McDaniels is a former inmate at the Monroe Correctional Center ("MCC"), a prison operated by the Washington State Department of Corrections ("DOC"). He is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action against nine MCC employees. Specifically, plaintiff alleges that the defendants violated his rights under the First Amendment, Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*., by denying him access to the Eid-Ul-Fitr and Eid-Al-Adha feasts in 2009, denying him a Halal diet, and affording him unequal treatment with respect to time allowed for religious celebrations and access to prayer oils compared with other religious groups. Dkt. 6. This matter comes before the Court on the

parties' cross motions for summary judgment. Dkt. 24; Dkt. 31. The Court, having considered the cross motions for summary judgment, the governing law, and the balance of the record, recommends that plaintiff's motion, Dkt. 24, be DENIED, defendants' motion, Dkt. 31, be GRANTED, and this case be DISMISSED with prejudice.

## II.    JURISDICTION

This Court has federal question jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1983. *See* 28 U.S.C. § 1331. The Court also has jurisdiction over all the parties in this case, as they are residents of Washington. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## III.    BACKGROUND

A.    Plaintiff's Claims Pursuant to 28 U.S.C. § 1983 and RLUIPA

Plaintiff seeks monetary and declaratory relief against the nine defendants, all of whom are DOC employees at MCC who work in either the minimum security unit ("MCC-MSU") or the Twin Rivers Unit ("MCC-TRU"), in their individual and official capacities: MCC-MSU Chaplain Henri Fischer, MCC-TRU Chaplain David Sherman, MCC Superintendent Scott Frakes, MCC Associate Superintendent Karen Portin, DOC Religious Program Manager Greg Garringer, DOC Assistant Director Dan Pacholke, MCC-TRU Captain Ed Fritch, MCC-TRU Correctional Specialist III ("CS3") Vicqui Heuett, and MMC-MSU CS3 Deborah Holly.[1] Dkt. 6 at 3. Specifically, the parties' cross motions present the following issues:

>    (1)    Is plaintiff's claim that defendants Sherman, Heuett, Holly, Portin, Frakes,
          Garringer, Pacholke, and Fischer violated plaintiff's rights under the First

---

[1] Contrary to MCC-MSU CS3 Deborah Holly's statement that she is not a defendant in this case, plaintiff has asserted several claims against her based upon her involvement with MCC's grievance program. *See* Dkt. 31, Ex. 1 at 1 (Holly Decl.); Dkt. 6 at 3.

Amendment and RLUIPA by denying plaintiff's request to attend the Eid-Ul-Fitr feast in 2009 barred by res judicata or collateral estoppel?

(2)   Did defendants Sherman, Fischer, Portin, Frakes, Garringer and Pacholke violate plaintiff's rights under the First Amendment and RLUIPA by denying plaintiff's request to attend the Eid-Al-Adha Feast in 2009?

(3)   Did defendants Sherman, Fischer, Heuett, and Holly violate plaintiff's rights under the First Amendment and RLUIPA by denying plaintiff a Halal Diet from November to December 2009 because plaintiff was already receiving a therapeutic diet to accommodate his peanut allergy?

(4)   Did defendants Sherman, Heuett, Portin, Frakes, Garringer, and Pacholke violate the Equal Protection Clause under the Fourteenth Amendment or the Establishment Clause under the First Amendment by providing unequal treatment to Muslims with respect to religious celebrations and prayer oils compared with other religious groups?

(5)   If the defendants are liable for violating plaintiff's rights under RLUIPA or the First or Fourteenth Amendments, are the defendants entitled to qualified immunity in their personal and professional capacities?

*See* Dkts. 6, 18, 24, 31.

B.    Factual History

The following facts are undisputed by the parties. Plaintiff arrived at MCC in December 2008, and was transferred between MCC-MSU and MCC-TRU until his release from prison in 2011. *See* Dkt. 30. Plaintiff is religiously affiliated with the Nation of Islam ("NOI"). As a Muslim, he engages in fasting during Ramadan, the ninth month of the Islamic lunar calendar. At the end of the month of fasting, Muslims celebrate a holiday known as Eid-Ul-Fitr, or "breaking of the fast." Another religious holiday celebrated by Muslims is Eid-Al-Adha, or the "festival of sacrifice." These religious celebrations are practiced by all Muslims, including plaintiff. *See* Dkt. 31, Ex. 2 at 1-2 (Fischer Decl.).

On August 24, 2009, defendant Sherman, who is the chaplain at MCC-TRU, denied plaintiff's oral request to attend the September 27, 2009 Eid-Ul-Fitr feast at MCC on the grounds

that plaintiff failed to meet the requirements set forth in DOC policy 560.210. Specifically, plaintiff failed to sign up before the August 13, 2009 deadline, or demonstrate "active participation" in the Muslim religion by attending at least 75% of the Jum'ah services at MCC in the preceding 90 days. *See id.*, Att. A. On August 25, 2009, plaintiff filed a grievance claiming that he could not satisfy the attendance policy because there was no NOI sponsor at MCC until July 26, 2009, and he could not attend the combined Jum'ah services because NOI and Sunni Muslims are not compatible and do not have identical beliefs. *See id.* Alternatively, plaintiff requested a separate Eid-Ul-Fitr feast exclusively for NOI members. *See id.*

On September 14, 2009, defendant Heuett responded to plaintiff's grievance by reaffirming defendant Sherman's finding that plaintiff was ineligible to attend the Eid-Ul-Fitr observance. Specifically, defendant Heuett explained that "in the absence of a Nation of Islam Sponsor, throughout Washington State Department of Corrections, all Islamic groups meet for a single Friday afternoon Jumah prayer. We have four offenders who are registered as Nation of Islam who met the participation requirements of policy." *See id.* Because plaintiff "chose to attend only one combined Islamic Jumah service since [his] arrival" at MCC in December 2008, however, defendant Heuett found that plaintiff did not satisfy DOC policy requirements. Furthermore, defendant Heuett noted that "[o]n August 7, 2009, we started a NOI Jumah service using a Christian sponsor which you have chosen not to attend as well." *See id.* With respect to plaintiff's alternative request for a separate NOI feast, defendant Heuett stated that DOC Policy 240.100 provides that requests for religious observances must be submitted to the Food Service Manager by December 10 of the previous year, and "no specific NOI observance was applied for at that time." *Id.*, Atts. A and B. Although petitioner appealed from defendant Heuett's response, his appeals were denied. *See id.*, Att. A.

Plaintiff also filed a separate grievance challenging the defendants' denial of his request to attend the Eid-Al-Adha feasts on November 27, 2009 and November 29, 2009 on the grounds that he had failed to demonstrate "active participation through attendance and consistency of practice for a minimum of 90 days prior to the event." *Id*., Ex. 2 at 4 (Fischer Decl.). Specifically, plaintiff asserted that "on or about October 21, 2009, Chaplain Henri Fischer gave me a formal memorandum letter which stated that I would not be allowed to attend the Eid-Ul-Adha at MSU, based upon guidance from Chaplain Sherman, Greg Garringer, and Asso. Supt. Karen Portin." *Id*., Ex. C. After the defendants denied plaintiff's grievance, plaintiff appealed, asserting that he "did meet all the attendance requirements as I attended every NOI service where Sponsor Anthony Muhammad was present. I should have been allowed to participate or DOC should state the number of programs/type of programs that are required to meet the participation clause in Policy 560.200, 560.210." *Id*. In plaintiff's summary judgment motion, however, plaintiff does not allege that he satisfied the DOC's attendance policy, but claims that the defendants denied him access to Eid-Al-Adha out of retaliation for his previous civil rights action against defendant Sherman regarding the 2009 Eid-Ul-Fitr feast. *See* Dkt. 24 at 5.

At the time that plaintiff filed his grievances related to the Eid-Ul-Fitr and Eid-Al-Adha feasts, DOC Policy 560.210 governed attendance at religious celebrations. Specifically, DOC Policy 560.210 provided that offenders who wanted to participate in special religious activities or events must sign up in advance, and have a signed and approved religious preference form on file 90 days prior to the event. *See* Dkt. 31, Ex. 3, Att. A. In addition, an inmate must "demonstrate active participation through attendance and consistency of practice for a minimum of 90 days prior to the religious special event. Priority will be given to those who have at least 75% attendance at all offered programs for that denomination or religious group." *Id.* If an

inmate transfers to a facility within 90 days of a religious event, the receiving chaplain is directed to contact the sending chaplain to ascertain whether the inmate "was practicing in the religion at his/her previous facility for the prior 90 days." *Id.*

In addition to his grievances related to the Eid-Ul-Fitr and Eid-Al-Adha feasts, plaintiff submitted a grievance on November 18, 2009, alleging that he was wrongfully denied a Halal diet. *See* Dkt. 31, Ex. 1 at 1 (Holly Decl.). In his grievance, plaintiff asserted that Chaplain Fischer informed him that pursuant to policy, plaintiff was ineligible to receive a Halal diet because he has a medical food allergy to peanuts. *See id.* Plaintiff's grievance was denied by defendant Deborah Holly, a CS3-Specialist at MCC-TRU, who responded that "the State Halal diet is not an option" because plaintiff already has "a medical diet with a restriction for 'no peanuts,'" and "a primary source of protein and calories for the Halal diet is provided by peanuts, or peanut based products, such as peanut butter." *Id.*, Att. B. Defendant Holly further informed plaintiff that his concerns would be forwarded to the Consolidated Food Manager to determine whether a diet that meets both plaintiff's religious and medical needs could reasonably be obtained. *See id.*

Plaintiff appealed defendant Holly's response on December 22, 2009, asserting that his religious and therapeutic diets could easily co-exist, and that eggs, cheese, or unprocessed meats could be substituted for any products containing peanuts or peanut products. *See id.* Defendant Garringer responded to plaintiff's appeal by acknowledging that Chaplain Fischer had denied plaintiff's religious diet in error, based upon his mistaken belief that he was enforcing present DOC policy. *See id.* He apologized for the inconvenience, and the MCC Consolidated Food manager immediately began to provide plaintiff with a no-peanut Halal diet on December 23,

1    2009.[2]  *See id*.  Plaintiff does not allege that he was ever denied a no-peanut Halal diet after that

2    date.  *See* Dkt. 24.

3           The policy governing therapeutic diets in effect at the time of plaintiff's grievance was

4    DOC Policy 610.240, which provided that when any food containing peanuts "is on the mainline,

5    [plaintiff] will be provided a substitute to that food."  Dkt. 31, Ex. 1, Att. A.   In addition, DOC

6    Policy 240.100, which governed the food services program, did not indicate that plaintiff could

7    not receive a diet that was both therapeutic and religious in nature.  Rather, it provided that

8    "religious diets must be approved and documented by the Chaplain per DOC 560.200 Religious

9    Program," and "[i]f a new or revised therapeutic and/or religious diet is approved, health services

10   staff or the Chaplain will provide the updated diet information to Food Service."  *Id*., Ex. 2, Att.

11   B.

12          Finally, the defendants also denied plaintiff's request for access to a greater variety of

13   prayer oils.  Specifically, plaintiff submitted a Religious Ceremony or Traditional Rites form

14   seeking permission to possess "3-1 oz. bottles of any of the oils listed on the attached sheet,"

15   which listed 64 fragrances.  Dkt. 31, Ex. 3, Att. C.  Plaintiff's request was denied by defendant

16   Garringer, the DOC Religious Program Manager, by letter dated August 18, 2009.  *See id*.

17   Defendant Garringer's letter informed plaintiff that "the current list of oils for Muslims will

18   remain in effect from the property matrix.  This list will be expanding in the near future and will

19   include many varieties of oils."  *Id*.

20

21

22   _____
     [2] Plaintiff also appealed from defendant Garringer's response on February 4, 2010, claiming that he had not yet
     been issued a new diet card reflecting his no-peanut Halal diet.  In response to this appeal, plaintiff was informed
     that his dietary issue had been resolved, and the error had been corrected.  *See id*., Att. B.  Plaintiff does not allege
23   that the defendants continued to withhold his new diet card.  *See* Dkt. 24.

DOC Policy 560.210 included a "DOC Religious Program and Property Matrix" that "identifies the religious groups authorized to have a sacred items box and the items that may be stored in it." Dkt. 31, Ex. 3, Att. A. According to the property matrix, members of the Nation of Islam could possess "3 – 1 oz. plastic bottles from the following oils only: Musk, Rose, Jasmine." *Id.* By contrast, Wiccans could possess "3-1 oz. plastic bottles" from a list of 26 essential oils. *Id.* Thus, it is undisputed that the defendants' denial of plaintiff's request was consistent with the policy in effect at the time. On April 19, 2010, DOC Policy 560.210 was incorporated into DOC Policy 560.200, which governs the DOC's "religious program," and thereby amended to provide that all offenders, regardless of religious affiliation, could possess "1.5 oz. total" of any of the following ten oils: "Myrrh, Sandalwood, Egyptian Musk, Eternity, Jasmine, Joops, Isseymiuyake, Frankincense, Rose, and Vanilla." *Id.*, Att. D.

C.     Procedural History

Plaintiff filed the instant § 1983 action on June 23, 2010. Dkt. 6. The defendants filed an answer on August 19, 2010. Dkt. 18. Plaintiff filed his motion for summary judgment on December 22, 2010. Dkt. 24. After requesting two additional extensions of time, the defendants filed their response and cross motion for summary judgment on March 7, 2011. Dkt. 31.

IV.     DISCUSSION

A.     Summary Judgment Standard

Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). That genuine issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

When applying these standards, the Court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party. *See United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by producing evidence that negates an essential element of the nonmoving party's claim, or by establishing that the nonmoving party does not have enough evidence of an essential element to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the merits of the case. Fed. R. Civ. P. 56(e). The nonmovant must do more than simply deny the veracity of everything offered by the moving party or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The mere existence of a scintilla of evidence in support of the plaintiff's position is likewise insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252. To avoid summary judgment, the nonmoving party must, in the words of Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party's failure of proof concerning an essential element of its case necessarily "renders all other facts immaterial," creating no genuine issue of fact and thereby entitling the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must set forth the specific factual bases upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 606 F.2d

1089, 1092 (9th Cir. 1980). Specifically, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state or federal law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the constitutional or statutory violations alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978).

**B.** <u>Plaintiff's Claims Regarding the 2009 Eid-Ul-Fitr Feast Are Barred</u>

Plaintiff alleges that the defendants violated RLUIPA and § 1983 through the First Amendment by refusing to allow him to attend the September 27, 2009 Eid-Ul-Fitr feast at MCC because he did not comply with the 90-day participation requirement set forth in DOC Policy 560.210. *See* Dkt. 24 at 3-6. Specifically, plaintiff asserts that "even if the defendants can show that they had a legitimate penological interest in [denying] the Plaintiff's request to observe the tenets of the NOI religious holiday, the defendants did not use the least restrictive means prior to depriving plaintiff of his right to freely exercise his religion." *Id*. at 4. Plaintiff asserts that there were "no NOI services established at MCC when Plaintiff arrived and . . . he spent the entire year getting the facility to recognize his group as a separate and distinct religion from the Orthodox Muslim (Sunni) group." *Id*. at 11. Although separate NOI religious services were established at MCC by August 2009, plaintiff alleges that there were less than 90 days between the implementation of the NOI Jum'ah and the Holy Month of Ramadan in 2009. *Id*. Finally, plaintiff argues that his "right to celebrate the Eid-Ul-Fitr in 2009 was denied due to retaliation"

for a prior civil rights action plaintiff filed against defendant Sherman in 2009. *Id*. at 5.

The defendants contend that plaintiff's claim is barred by res judicata, or alternatively, collateral estoppel, because plaintiff "has already brought this federal claim based upon the same set of facts in this Court in cause number C09-1296-JCC." Dkt. 31 at 9, 11.[3] If neither doctrine bars plaintiff's claims, defendants argue that plaintiff was fully capable of satisfying DOC Policy 560.210's requirement of "active participation through attendance and consistency of practice for a minimum of 90 days prior to the event," but he simply failed to do so. Dkt. 31, Ex. 2 at 4 (Fischer Decl.). Specifically, defendants allege that although there were no NOI religious services at MCC until August 2009, plaintiff could have attended the general Muslim services that were available. Contrary to plaintiff's claim that he cannot attend a combined service, defendants argue that several "other Nation of Islam members did attend these services and were approved to participate in the Eid-Ul-Fitr event in 2009." Dkt. 31 at 4. Finally, defendants assert that plaintiff's appeal of his request to have a separate Eid-Ul-Fitr feast for NOI members was denied by defendants Holly, Pacholke, and Portin because all requests for religious observances must be submitted to the Food Service Manager by December 10 of the previous year pursuant to DOC Policy 240.100. *See id*., Ex. 2 at 3 (Fischer Decl.).

### 1.  *Res Judicata and Collateral Estoppel*

The doctrines of res judicata and collateral estoppel, while interwoven, each contain distinct elements that must be satisfied for one or the other to apply. The U.S. Supreme Court has explained that res judicata is the term traditionally used to describe two discrete effects: (1) what we now call claim preclusion (a valid final adjudication of a claim precludes a second

---

[3] Plaintiff filed numerous cases in this Court during his incarceration at MCC. The only one relevant to the instant action, however, is *McDaniels v. Sherman*, C09-1296-JCC-MAT (W.D. Wash. 2009).

REPORT AND RECOMMENDATION
PAGE - 11

action on that claim or any part of it) and (2) issue preclusion, long called "collateral estoppel" (an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim). *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233 n.5 (1998) (citations omitted).

Res judicata, or claim preclusion, applies when there exists between two separate cases (1) identity or privity between the parties, (2) identity of claims, and (3) a final judgment on the merits in the first case. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Blonder-Tongue Lab v. University of Ill. Found.,* 402 U.S. 313, 323-24 (1971); *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201-02 (9th Cir.1982); *Western Radio Servs. Co. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir. 1997). All three of these essential elements must be shown for res judicata to apply. Moreover, a change in the legal theory underlying claims brought in the first round of litigation will not defeat res judicata. *See Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 988 (9th Cir. 2005).

In defining the word "privity" in the context of res judicata, the Ninth Circuit has explained that privity "is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.'" *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997). Federal courts have recognized several relationships close enough to trigger preclusion. Relevant to this case, privity is established where the interests of a non-party were represented adequately by a party in the original suit. *See id*.

To determine whether identity of claims has been established, federal courts consider: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the

two actions; (3) whether the two suits involve infringement of the same rights; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Costantini*, 681 F.2d at 1201; *see Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007). The last of these criteria is considered the most important, and "[n]o single criterion can decide every res judicata question [because] identity of causes of action cannot be determined precisely by mechanistic application of a simple test. *Femnist Women's Health Center v. Codispoti*, 63 F.3d 863, 867 (9th Cir. 1995); *Costantini*, 681 F.2d at 1202 n.7. Finally, the Ninth Circuit has found that a dismissal with prejudice is a phrase often used interchangeably with the phrase "final judgment on the merits." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002); *see Leon v. IDX Systems Corp.,* 464 F.3d 951, 962 (9th Cir. 2006).

In contrast to the doctrine of res judicata, the doctrine of collateral estoppel precludes re-litigation of an issue that was actually litigated and necessarily determined in the prior action. *Hanson v. City of Snohomish,* 121 Wash.2d 552, 561-62, 852 P.2d 295 (Wash. 1993). State law governs the application of collateral estoppel in federal civil rights cases. *Allen v. McCurry*, 449 U.S. 90, 96 (1980); *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990). The party asserting the defense must establish that (1) the issue decided in the prior adjudication is identical to the one presented in the second; (2) the prior adjudication ended with a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or was in privity with a party to the prior adjudication; and (4) application of the doctrine does not work an injustice. *Id.*

2. *Plaintiff's Prior Civil Rights Case Against Defendant Sherman*

In plaintiff's previous § 1983 action, *McDaniels v. Sherman*, C09-1296-JCC-MAT (W.D. Wash. 2009), plaintiff also argued that it was impossible for him to satisfy DOC Policy

560.210's 90-day participation requirement prior to the 2009 Eid-Ul-Fitr feast because the NOI sponsor first arrived at MCC-TRU in July 2009, and NOI beliefs were incompatible with the Sunni beliefs represented at the general Muslim Jum'ah prayer services. Additionally, plaintiff challenged defendant Sherman's denial of his requests to attend the general feast or have a separate NOI Eid-Ul-Fitr feast because plaintiff's requests were tardy.

The Honorable Mary Alice Theiler held that denying plaintiff access at the 2009 Eil-Ul-Fitr feast did not violate RLUIPA or the First Amendment, because the DOC had compelling reasons to require inmates to sign up in advance for special activities, and such a policy was the least restrictive means of accomplishing such goals. *See McDaniels v. Sherman*, 2010 WL 5620955, *4-5 (W.D. Wash. 2010). Specifically, the Court concluded that plaintiff

> failed to demonstrate a prima facie claim that defendant imposed a substantial burden on the exercise of his religious beliefs unless tardiness and lack of participation in religious services are considered to be protected religious conduct. The undisputed record shows that Mr. McDaniels missed the deadline for signing up for the Eid feast, did not seek to attend the feast marking the end of Ramadan until part way through the month of Ramadan, suggested repeatedly that NOI beliefs differed too greatly from the beliefs of other Muslims for him to attend the Eid feast he claimed was denied to him, and missed the deadline for registering a separate, NOI Eid meal . . . In sum, defendant and the DOC rejected Mr. McDaniels claims because he had missed deadlines and evinced little interest in participating in mandatory religious services, including ones specifically geared to NOI members.

*Id*. at *6. Final judgment in favor of defendant Sherman was entered on September 28, 2010.

3.     *Plaintiff's 2009 Eid-Ul-Fitr Claims are Precluded by Res Judicata*

The Court agrees with the defendants that plaintiff's claims in this action regarding the 2009 Eid-Ul-Fitr feast are barred by res judicata. As mentioned above, a final judgment on the

merits was entered in the previous action when the action was dismissed with prejudice in September 2010. The Court also finds that the requisite identity or privity exists between the parties in the two cases. Specifically, defendant Sherman was named as a defendant in both actions, and although in this case plaintiff has named several additional defendants who denied plaintiff's grievances and therefore upheld Sherman's denial of plaintiff's request to attend the 2009 Eid-Ul-Fitr feast, each of these additional defendants were DOC employees sued for actions taken as DOC employees. *See Funds for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992) (citing *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 402-03 (1940) (finding that privity exists between officers of the same government so that a judgment in a suit between a party and a representative of the government is res judicata in re-litigation of the same issue between that party and another officer of the government)). Under these circumstances, the Court finds that these additional defendants' relationship with defendant Sherman is close enough that he adequately represented their interests in the previous lawsuit.

With respect to the identity of the claims involved, the Court finds that the previously established right of defendant Sherman to deny plaintiff access to the religious events at MCC due to his noncompliance with DOC Policy 560.210's attendance requirement would be destroyed or impaired by the re-prosecution of this claim. Moreover, the previous action involved alleged infringement of the same rights that plaintiff claims were violated in this case. Most significantly, plaintiff's claims related to the Eid-Ul-Fitr feast, including his new argument that the defendants denied his request out of retaliation for the previous lawsuit, arise out of the same transactional nucleas of facts as the previous lawsuit, and involve substantially the same evidence. *See* Dkt. 24 at 5. Thus, the Court finds that all three elements of res judicata have been established.

Accordingly, plaintiff is precluded from re-litigating his claims regarding the 2009 Eid-Ul-Fitr feast. As plaintiff's claims are barred by res judicata, it is unnecessary for the Court to determine whether collateral estoppel would also apply. The defendants' motion for summary judgment on this claim is GRANTED.

C.  Plaintiff's Rights Under RLUIPA and the First Amendment were Not Violated By the Denial of His Request to Attend the Eid-Al-Adha Feast

Plaintiff also argues that his "right to celebrate the Eid-Al-Adha in 2009 was denied due to his litigation against Defendant Sherman, and the instructions passed to Defendant Fischer from Defendant Sherman that Plaintiff was not eligible to attend." Dkt. 24 at 5. Specifically, plaintiff asserts that defendant Fischer initially approved plaintiff to attend the Eid-Al-Adha, however, "[o]nce defendant Fischer became aware of [plaintiff's] pending lawsuit against his co-worker and superior Chaplain, [defendant Sherman], he changed his decision, and denied Plaintiff's participation in the Eid-Ul-Adha Islamic Feast, upon communication with defendants Portin, Sherman, and Garringer." *Id*. at 11-12. Plaintiff contends that his rights were further denied by defendants Portin, Frakes, Garringer and Pacholke, "who all refused to intervene during the grievance process." *Id*. at 5. Finally, plaintiff alleges that "the Religious Program Policy upheld by the defendants . . . [is] a direct affront to Plaintiff's First Amendment Rights and his rights under RLUIPA." *Id.* at 6.

The defendants assert that plaintiff has not presented a valid claim under RLUIPA or the First Amendment because he has not demonstrated that the defendants have substantially burdened his religious practice. Dkt. 31 at 16. Contrary to plaintiff's claim that he was denied attendance out of retaliation for plaintiff's previous lawsuit against defendant Sherman, the defendants assert that plaintiff was denied access to the feast because of his failure to comply

with DOC policy requirements. Defendant Fischer asserts that "because Mr. McDaniels had arrived at the Minimum Security Unit at MCC less than 60 days prior to the Eid-Al-Adha event," he contacted defendant Sherman, the sending chaplain, in accordance with policy to verify that plaintiff met the policy requirement of "active participation" for a minimum of 90 days prior to the event. *See* Dkt. 31, Ex. 2 at 4 (Fischer Decl.). Defendant Fischer learned "that Mr. McDaniels had not complied with policy. As such, Mr. McDaniels was denied attendance at the Eid-Al-Adha event in 2009." *Id.* Defendant Fischer also asserts that "[a]lthough in a grievance submitted by Mr. McDaniels on or about December 1, 2009, he claims that he met all policy requirements to attend this event, this is simply not true . . . Mr. McDaniels was informed in response to [his] grievance and its subsequent appeals that he had not met the standard of 'active participation through attendance and consistency of practice' in Muslim services as required by policy in order to attend this event." *Id.* at 3.

### 1. *The First Amendment and RLUIPA*

To establish a First Amendment religious claim, a prisoner "must show the [defendants] burdened the practice of [his] religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). The Ninth Circuit has clarified that it examines free-exercise claims under the First Amendment according to the "sincerity" test rather than according to the "centrality test." *See Shakur v. Schriro*, 514 F.3d 878, 855 (9th Cir. 2008) ("Given the Supreme Court's disapproval of the centrality test, we are satisfied that the sincerity test . . . determines whether the Free Exercise Clause applies."). Specifically, a prisoner's religious concern implicates the Free Exercise Clause if it is (1) "sincerely held" and (2) "rooted

in religious belief," rather than in secular philosophical concerns. *Id*. (citing *Malik v. Brown*, 16 F.d 330, 333 (9th Cir. 1994)).

Additionally, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987). To make this determination, *Turner* sets forth four factors that federal courts must balance: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) whether accommodation of the asserted constitutional right will impact guards, other inmates, and the allocation of prison resources generally; and (4) whether there is an absence of ready alternatives versus the presence of obvious, easy alternatives. *Id.* at 89-90.

RLUIPA also bars inquiry into whether a particular belief or practice is "central" to a prisoner's religion, and defines religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). *See also Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005); *Greene v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008). However, as opposed to the deferential rational basis standard of *Turner*, RLUIPA requires the government to meet the much stricter burden of showing that the burden it imposes on religious exercise is "in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest." *Greene*, 513 F.3d at 986. Specifically, RLUIPA provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution,... unless the government demonstrates that imposition of the burden on that person -

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Under RLUIPA, the plaintiff "bears the initial burden of going forward with evidence to demonstrate a prima facie claim" that the challenged state action constitutes "a substantial burden on the exercise of his religious beliefs." *Warsoldier v. Woodford,* 418 F.3d 989, 994 (9th Cir. 2005). "[A] burden is substantial under RLUIPA when the state denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Shakur v. Schriro,* 514 F.3d 878, 888 (9th Cir. 2008) (citations and internal quotation marks omitted). However, a prison's "accommodation of religious observances" should not be elevated "over an institution's need to maintain order and safety." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). If the plaintiff successfully establishes his *prima facie* case, the defendant-prison then bears the burden of establishing that the challenged regulation is "in furtherance of a compelling governmental interest," and the "least restrictive means of furthering that compelling governmental interest." *Warsoldier*, 418 F.3d at 995. As a result of RLUIPA's heightened level of scrutiny, a policy which passes constitutional scrutiny under the First Amendment may not pass scrutiny under RLUIPA. If a policy survives the RLUIPA analysis, however, it will survive the First Amendment analysis.

2. *Plaintiff Has Not Established a Prima Facie Case Under RLUIPA*

Here, plaintiff has not provided any evidence that the denial of access to the 2009 Eid-Al-Adha feast imposed a "substantial burden on the exercise of his religious beliefs" by preventing

him from engaging in conduct mandated by his faith, thereby putting substantial pressure on him to modify his behavior and violate his beliefs. *See Shakur*, 514 F.3d at 888. Specifically, plaintiff has not provided any evidence to contradict the defendants' assertion that he failed to participate in religious observances for 90 days prior to the November 2009 Eid-Al-Adha feast. Unlike his claims regarding the September 2009 Eid-Ul-Fitr, plaintiff does not argue that he was unable to participate in NOI observances during the 90-day period leading up to the November 2009 Eid-Al-Adha feast. Even if attending a general Jum'ah service violated plaintiff's religious beliefs while attending a general Eid-Al-Adha feast would not, plaintiff has shown very little interest in participating in mandatory NOI religious observations at MCC. Most significantly, plaintiff failed to attend weekly NOI Jum'ah prayers – which are undisputedly mandated by his faith - since NOI service began at MCC on August 7, 2009. In light of plaintiff's failure to participate in mandatory NOI religious observances, he cannot show that the defendants' denial of his request to attend the Eid-Al-Adha substantially burdened his religious practice.

As plaintiff has not met his initial burden of establishing a prima facie claim under RLUIPA, the burden does not shift to the defendants to show that the government employed the least restrictive means of furthering a compelling government interest. *See Warsoldier*, 418 F.3d at 955. Plaintiff's claim under RLUIPA fails.

3.      *Plaintiff Has Not Satisfied the Sincerity Test or the* Turner *Test*

With respect to plaintiff's First Amendment claim, the Court finds that plaintiff cannot satisfy the "sincerity" test by showing that his lack of participation in religious services at MCC was "sincerely held" and "rooted in religious belief." *See Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). As discussed above, plaintiff appears to have been fully capable of complying with DOC Policy 560.210 by actively participating in his religion for 90 days prior to the November

2009 feast, such as attending the weekly NOI Jum'ah prayer, but he chose not to do so. Not only did plaintiff decline to participate in general Jum'ah services open to all Muslims, including NOI members who attended those general services, but he also did not participate in any of the exclusively NOI Jum'ah services held at MCC since early August 2009. Furthermore, there is no evidence that the defendants' rejection of plaintiff's request to participate in the Eid-Al-Adha feast was related to plaintiff's religious convictions. DOC Policy 560.210's attendance policy is value-neutral, and the evidence in the record demonstrates that the defendants rejected plaintiff's request due to his lack of demonstrated interest in participating in any religious services at MCC.

With respect to *Turner*'s reasonable relation test, the Court finds that the attendance requirements set forth in DOC Policy 560.210 were reasonably related to the legitimate penological goals of maintaining order, safety, and security. As the Honorable Brian Tsuchida recently explained, in finding the *Turner* factors satisfied in another case before this Court resulting from the denial of a prisoner's request to participate in the 2009 Eid-Ul-Fitr at MCC due to that prisoner's failure to satisfy DOC Policy 560.210's attendance requirements:

> There is a valid, rational connection between the [DOC's] requirement to participate in the existing, publically offered religious services in order to participate in an annual, specially arranged, religious observance that involves significant advance planning involving guests, security, food services, religious sponsorship, and a substantial financial expenditure. Such special religious observances allow participants to receive family and friends, and to partake in food and festivities that are not commonly available. The DOC policy rationally attempts to give priority of attendance to those persons who have demonstrated an interest in the given religion. Accommodating [plaintiff's] demand to participate in a special religious observance without his demonstrating any involvement with that religion or likelihood of ever participating in that religion's mandatory practices would detract from the DOC's attempt to honor the religious beliefs of those offenders who regularly participated in public religious

practices and had, unlike [plaintiff], followed the requirements for establishing and participating in the 2009 Eid.

*Ashby v. Sherman*, 2010 WL 4718797, *3-4 (W.D. Wash. 2010).

Finally, the Court finds that, contrary to plaintiff's claim that he was denied access to the Eid-Al-Adha feast out of retaliation for his lawsuit against defendant Sherman, the overwhelming evidence in the record demonstrates that the defendants were simply applying the DOC's value-neutral policy. Plaintiff does not allege that the defendants retaliated against him on account of his religious beliefs. Accordingly, the Court recommends that defendants' motion for summary judgment on plaintiff's claim regarding the 2009 Eid-Al-Adha feast under RLUIPA and the First Amendment be GRANTED.

D.    Plaintiff Has Established a Genuine Issue of Material Fact Regarding Whether the Defendants' Denial of a Halal Diet Violated His First Amendment Rights, But His Claim Under RLUIPA Fails Under the Statute's Safe Harbor Provision

Plaintiff contends that his right to exercise his religion through a Halal diet was denied by defendants Sherman, Fischer, Heuett, and Holly because he was already receiving a therapeutic diet to accommodate his peanut allergy. Dkt. 24 at 5. Plaintiff contends that "both defendants, Sherman and Fischer, denied the Plaintiff's request, and did nothing to investigate their actions until Plaintiff filed and exhausted the grievance process." *Id*. at 12.

Defendants concede, for purposes of this motion, that plaintiff's "right to exercise his religion through a Halal diet was substantially burdened when his request was briefly denied by the Department." Dkt. 31 at 16. *See Shakur*, 414 F.3d at 888-89 (providing that the Halal diet is a "required practice" for purposes of RLUIPA). However, defendants point out that "the Department had a very compelling reason: Mr. McDaniels is allergic to peanuts, previously the basis of MCC's Halal meals." Dkt. 31 at 16-17 (citing *Cutter*, 544 U.S. at 722; *Shakur*, 514 F.3d

at 889; *Greene*, 513 F.3d at 989).  According to defendants, the key inquiry for this Court is whether the denial of the Halal diet was "the least restrictive means for furthering the department's requirement that it protect an inmate from threats to his health."  *Id.* (citing *Warsoldier*, 514 at 890 (providing that in order to demonstrate that a restriction is the least restrictive means of furthering a compelling government interest, the defendants must demonstrate that it "has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice.")).  Defendants assert that "the Department cannot provide peanut-based diets to those, like Mr. McDaniels, who are allergic to peanuts . . . Regardless of a health threat to allergic inmates, to create a diet that meets every combination of religious and medical needs would place a huge burden on the Department.  As such, choosing to provide Mr. McDaniels (for a brief time) with a medical, rather than Halal, diet was the least restrictive means of protecting Mr. McDaniels' health."  *Id.* at 18.

       1.    *Defendants Have Failed to Show the Absence of a Genuine Issue of Material Fact Regarding Whether the Defendants' Denial of a Halal Diet Violated Plaintiff's Rights Under RLUIPA*

As a threshold matter, the Court agrees with the parties that the denial of plaintiff's request for a Halal diet in November 2009 substantially burdened his religious exercise.  Over one month elapsed between plaintiff's initial grievance on November 18, 2009, and the time plaintiff received his no-peanut Halal diet on December 23, 2009.  Thus, the defendants bear the burden of demonstrating that the denial of plaintiff's Halal diet was the least restrictive means of furthering a compelling government interest.  *See* 42 U.S.C. § 2000cc-1.

The defendants assert that "regardless of a health threat to allergic inmates, to create a diet that meets every combination of religious and medical needs would place a huge burden on the Department."  Dkt. 3 at 18.  Without more, however, the Court is unconvinced that cost

constitutes a compelling reason for the defendants to deny plaintiff's request. The defendants have not directed the Court to any authority, and the Court is aware of none, finding that conclusory allegations regarding cost constitute a compelling government interest under RLUIPA when a prison policy or practice was at issue. *See Shakur*, 514 F.3d at 891 (holding that conclusory assertions in a declaration by the DOC's Pastoral Administrator regarding the prohibitive costs of providing a religious diet to Muslim inmates does not establish a compelling government interest). Defendants have failed to offer any evidence to support their assertion that the cost of accommodating requests like the plaintiff's would be so cost prohibitive as to constitute a compelling government interest.

The defendants also allege that the state has a compelling governmental interest in maintaining safety and security, including the basic health of inmates. *See Cutter*, 544 U.S. at 723; *Greene*, 513 F.3d at 986; *Warsoldier*, 418 F.3d at 999. At the time of plaintiff's request, the primary source of protein and calories in the Halal diet being provided to Muslim inmates was provided by peanuts or peanut-based products such as peanut butter. *See* Dkt. 31, Ex. 1 (Holly Decl.). Defendants assert that "[c]learly, the Department cannot provide peanut-based diets to those, like Mr. McDaniels, who are allergic to peanuts. To do so would be a direct threat to his health, and likely an Eighth Amendment violation." Dkt. 31 at 18. The Court agrees that protecting plaintiff's health and safety was a compelling reason for the defendants to deny plaintiff's request.

However, the defendants have provided no evidence to meet their additional burden of demonstrating that denying plaintiff a Halal diet altogether was the least restrictive means of furthering this compelling interest. *See* 42 U.S.C. § 2000cc-1. To meet this burden, the defendants must show that they "actually considered and rejected the efficacy of less restrictive

1  measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999.  Defendants

2  apparently concede that they did not consider less restrictive measures before denying plaintiff's

3  initial request for a Halal diet on November 19, 2009, and denying his grievance on December

4  21, 2009, because they offer no argument or evidence regarding their evaluation of less

5  restrictive measures as part of their motion.  *See* Dkt.31, Ex. 1 at 1-2 (Holly Decl.).

6      Indeed, it appears that the defendants did not consider less restrictive measures until

7  December 22, 2009, when plaintiff appealed the denial of his grievance and suggested that the

8  defendants substitute eggs, cheese, or unprocessed meats for the peanut-based products in the

9  standard Halal meals in order to accommodate his request. *See id*. at 2.  The investigative report

10  related to plaintiff's grievances reflects that as soon as the defendants did consider this less

11  restrictive option in late December 2009, Consolidated Food Services was able "to accommodate

12  the [no peanut Halal] diet with only a few modifications" and also "ensure the diet was

13  implemented wherever Mr. McDanile (sic) was assigned" within the DOC.  *Id*.

14      Accordingly, the Court finds that the defendants have failed to establish the absence of a

15  genuine issue of material fact regarding whether the defendants violated plaintiff's rights under

16  RLUIPA by denying him a Halal diet from November – December 2009.

17      2.    *RLUIPA's Safe Harbor Provision Applies Because the Defendants Are
            Unlikely to Repeat the Alleged Harm*

18  The Court notes that both parties failed to discuss the applicability of RLUIPA's safe

19  harbor provision, which provides that the government may avoid liability under RLUIPA "by

20  changing the policy or practice that results in a substantial burden on religious exercise, by

21  retaining the policy or practice and exempting the substantially burdened religious exercise, by

22  providing exemptions from the policy or practice for applications that substantially burden

23

1   religious exercise, or by any other means that eliminates the substantial burden."  42 U.S.C. §

2   2000cc-3(e).  This Court is not aware of any Ninth Circuit case interpreting this safe harbor

3   provision, and the only courts of appeals that appear to have addressed this provision have

4   interpreted it under a mootness analysis, which appears consistent with the plain language of 42

5   U.S.C. § 2000cc-3(e).[4]

6        This Court has previously held that when prison officials provide a Halal diet to a

7   prisoner, following an initial denial of the prisoner's requests for such a diet, this conduct

8   "constitutes a change in practice that eliminates any burden on religious exercise under the

9   RLUIPA."  *Bilil v. Lehman*, 2006 WL 3626808, *4-5 (W.D. Wash. 2006) (citing *Boles v. Neet*,

10  402 F.Supp.2d 1237, 1240 (D. Colo. 2005) (finding prison's change in policy to allow inmate to

11  wear religious garments rendered RLUIPA claim moot under 42 U.S.C. § 2000cc-3(e)).

12  RLUIPA's safe harbor provision appears similarly applicable to this case, because the defendants

13  denied plaintiff's request for a Halal diet for approximately one month before granting his

14  request.  *See* Dkt. 31, Ex. 1 (Holly Decl.).

15       This is not the end of our inquiry, however.  The U.S. Supreme Court has held that

16  voluntary cessation of challenged conduct moots a case only if it is "absolutely clear that the

---

17   [4] Plaintiff is no longer incarcerated at MCC.  An inmate's release from prison while his claims are
pending generally moots any claims for injunctive or declaratory relief relating to the prison's policies
18   unless the suit has been certified as a class action.  *See Preiser v. Newkirk,* 422 U .S. 395, 403 (1975)
(holding inmate's request for declaratory judgment rendered moot by inmate's transfer to another prison);
19   *Dilley v. Gunn,* 64 F.3d 1365, 1368-69 (9th Cir. 1995) (holding inmate's request for injunctive relief
rendered moot by inmate's transfer to another prison); *Johnson v. Moore,* 948 F.2d 517, 519 (9th Cir.
20   1991) (same); *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir. 1986) (same).  In this case, "Plaintiff
seeks declaratory relief [and] compensatory relief," but "did not request in his pleading any permanent
21   injunctive relief, because Plaintiff may be released during the case[.]"  Dkt. 21 at 2.  Thus, although
plaintiff's claims for declaratory relief were rendered moot by his release from prison, his claims for
22   compensatory relief were not.  *See Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 8 (1978).
Accordingly, the Court recommends that the defendants be granted summary judgment on plaintiff's
23   claims for declaratory relief.

allegedly wrongful behavior could not reasonably be expected to recur," and the "heavy burden

of persuading the court that the challenged conduct cannot reasonably be expected to start up

again lies with the defendant." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000)

(quoting *United States v. Concentrated Phosphate Export Assn., Inc*., 393 U.S. 199, 203 (1968)).

Voluntary cessation will not render a case moot unless events have completely and irrevocably

eradicated the effects of the alleged violation. *County of Los Angeles v. Davis*, 440 U.S. 625,

631 (1979). *See also Lindquist v. Idaho State Bd. of Corrs*., 776 F.2d 851, 853-54 (9th Cir.

1985) (holding that a prisoner's claim that a prison law library failed to meet constitutional

standards was rendered moot because improvements were made to the library in good faith, there

was no indication the prison would abandon its efforts, and the existence of a new library

eradicated any possible effects of the previous conditions).

Here, the Court finds that the defendants are not likely to repeat their challenged conduct

in the future. As mentioned above, as soon as defendant Garringer became aware that

defendants Fischer and Holly had denied plaintiff's request based upon their misunderstanding of

the applicable DOC policy, he apologized to plaintiff and immediately corrected the mistake.

*See* Dkt. 31, Ex. 1, Att. B. Plaintiff began receiving his no-peanut Halal diet just over one month

after his November 18, 2009 grievance. Furthermore, DOC Policy 560.200 was revised on April

19, 2010 to provide that an "offender [must] either: (1) Remove the religious diet . . . [or] remove

the therapeutic diet" only "[i]f a Dietician determines that an offender's religious diet is

incompatible with a recommended therapeutic diet." Dkt. 31, Ex. 1, Att. D. Thus, it does not

appear that the DOC will deny inmates' requests for diets that accommodate both their religious

and therapeutic dietary needs unless a dietician has specifically determined that the requested

diets are incompatible. Most significantly, it is uncontested that plaintiff received his requested

no-peanut Halal diet from December 23, 2009 until his release from prison.  *See* Dkt. 24.

Because the defendants have met their burden of demonstrating that their subsequent actions

completely eradicated the effects of their temporary denial of plaintiff's Halal diet and they are

unlikely to repeat their wrongful conduct in the future, they have satisfied the safe harbor

provision of 42 U.S.C. § 2000cc-3(e).  Accordingly, the defendants' summary judgment motion

on plaintiff's RLUIPA claim should be GRANTED.

3.      *Defendants Have Failed to Show the Absence of a Genuine Issue of Material Fact Regarding Whether the Defendants' Temporary Denial of a Halal Diet Violated Plaintiff's First Amendment Rights*

As a threshold matter, in light of the sincerity of plaintiff's belief that he is personally

required to consume a Halal diet to maintain his spirituality, the Court is satisfied that MCC's

refusal to provide the Halal diet implicates the Free Exercise Clause of the First Amendment.

*See Shakur*, 514 F.3d at 855.  Furthermore, a reasonable jury could find that defendants

Sherman, Fischer, Heuett, and Holly substantially burdened plaintiff's religious exercise by

denying him a Halal diet.

Under First Amendment jurisprudence, the Court must next consider whether there is a

valid, rational connection between the conduct and the legitimate governmental interest put

forward to justify it, whether there are alternative means for the inmate's exercise of the

constitutional right at issue, the impact of the desired accommodation on guards, other inmates,

and prison resources generally, and the absence of other alternatives.  *See Turner*, 482 U.S. at

89-90.  The defendants, however, have failed to address these issues, apart from simply asserting

that "to create a diet that meets every combination of religious and medical needs would place a

huge burden on the Department.  As such, choosing to provide Mr. McDaniels (for a brief time)

with a medical, rather than Halal, diet was the least restrictive means of protecting Mr.

McDaniels' health." Dkt. 31 at 18. Specifically, the defendant has provided no evidence to show that providing plaintiff with a no-peanut Halal diet actually imposed either budgetary or administrative burdens on the DOC. To the contrary, the record before the Court suggests that the defendants were able to accommodate plaintiff's dietary requests quickly and easily.

In the Ninth Circuit, prison officials' bare assertions regarding the burdens of a proposed accommodation do not suffice; they must tender evidence with which a court may analyze each of the *Turner* factors.[5] *See Shakur*, 514 F.3d at 886-87; *Ward,* 1 F.3d at 879. Because the defendants have failed to do so in this case, a genuine issue of material fact remains as to whether the defendants violated plaintiffs' First Amendment rights by denying him a Halal diet.

E. <u>Plaintiff's Claims Regarding Religious Events and Prayer Oils Fail to Establish a Violation of the Equal Protection Clause or Establishment Clause</u>

1. *Plaintiff Fails to State a Claim Under the Equal Protection Clause*

Plaintiff argues that defendants Sherman, Heuett, Portin, Frakes, Garringer, and Pacholke violated his rights under the Equal Protection Clause by providing unequal treatment to Muslims compared with other religious groups at MCC with respect to time allotted for religious celebrations and prayer oils. Dkt. 24 at 5, 10-11. Specifically, plaintiff alleges that the defendants "allowed the Native American Group to celebrate the Pow-Wow from 12:30-8:30 p.m., and did not allow any [other] group to celebrate for that length of time." *Id.* at 5. In addition, plaintiff contends that his "right to be treated equally and fairly to other similarly situated inmates or religious groups was denied, where DOC Policy, Chaplain Sherman, Chaplain Fischer, Vicqui Heuett, Captain Ed Fritch, and Greg Garringer each refused to allow

---

[5] Furthermore, in light of the fact that plaintiff's RLUIPA claim failed under the statute's safe harbor provision, rather than RLUIPA's heightened level of scrutiny, the Court cannot find that the defendants' actions clearly passed constitutional scrutiny under the First Amendment.

the Plaintiff to possess any prayer oils other than rose, musk or jasmine," although they allowed the pagan group to purchase over 26 types of oils and fragrances.  *Id*. at 6, 9-10.

Defendants respond that plaintiff has failed to state a valid equal protection claim because he has not shown unequal treatment among religious groups at MCC for any discriminatory purpose.  Specifically, defendants argue that plaintiff "has provided no support, other than conclusory allegations, that Muslims are treated differently than other religious groups for a discriminatory purpose.  Moreover, Mr. McDaniels does not, and cannot show, that inmates are a protected class.  As such, this claim fails."  Dkt. 31 at 13.  Defendant Sherman also submitted a declaration explaining that although plaintiff "submitted the proper form with the necessary signatures on or about July 26, 2009, requesting an additional 64 oils be added to the property matrix," plaintiff was later "informed via letter that his request to add the additional 64 oils to the property matrix was denied, however the list of approved oils would be expanding in the near future."  Dkt. 31, Ex. 3 at 3 (Sherman Decl.).  Indeed, defendants have provided evidence that the relevant DOC policy was revised on April 19, 2010 to provide that the same number of "oils are now approved for all religions: Myrrh, Sandalwood, Egyptian Musk, Eternity, Jasmine, Joop, Issey Miyake, Frankincense, Rose, and Vanilla."  *See id*., Att. D.

Prisoners enjoy religious freedom and equal protection of the law subject to restrictions and limitations necessitated by legitimate penological interests.  *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979).  The Equal Protection Clause requires the State to treat all similarly situated people equally, and ensures that prison officials cannot discriminate against particular religions.  *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  Specifically, the Equal Protection Clause entitles each prisoner, including a prisoner who is an adherent of a minority religion, to "a reasonable opportunity of pursuing his faith comparable to the

opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v.*

*Beto*, 405 U.S. 319, 322 (1972) (per curiam) (Buddhist prisoners must be given opportunity to

pursue faith comparable to that given Christian prisoners). Although prisoners are entitled to

equal protection, it does not follow that a prison must duplicate every religious benefit it

provides so that all religions are treated exactly the same. The U.S. Supreme Court has held that

prisons need not provide identical facilities or personnel to different faiths, but must make a

"good faith accommodations of the prisoner's rights in light of practical considerations." *Allen*

*v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987).

To prevail on an equal protection claim under § 1983, a plaintiff must show that "the

defendants, acting under color of state law, discriminated against [the plaintiff or plaintiffs] as

members of an identifiable class and that the discrimination was intentional." *Flores v. Morgan*

*Hill Unified School Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003). The Ninth Circuit has held that

"[b]eyond this requirement of showing intentional discrimination . . . there is no specific test that

an equal protection plaintiff is required to meet, and in order to survive a motion for summary

judgment by the defendant, a plaintiff must only produce evidence sufficient to establish a

genuine issue of fact as to the defendant's motivations." *FDIC v. Henderson*, 940 F.2d 465, 471

(9th Cir. 1992).

The Court rejects the defendants' assertion that plaintiff's equal protection claim fails

because "Mr. McDaniels does not, and cannot show, that inmates are a protected class." Dkt. 31

at 13. As discussed above, plaintiff is alleging that the defendants discriminated against him

based upon his status as a NOI Muslim, and not an inmate. Nevertheless, the Court agrees with

defendants that plaintiff's equal protection claims are unavailing. Without more, plaintiff's

conclusory assertion that Native Americans were granted more time to celebrate a religious

holiday on one occasion than other religious groups are typically allowed does not establish an equal protection claim. Moreover, plaintiff has provided no evidence that NOI Muslims are singled out and afforded less time than other religious groups to celebrate their religious events.

There is ample evidence in the record that NOI Muslims were permitted access to fewer prayer oils than other religious groups, such as Wiccans, before DOC Policy 560.200 was revised in April 2010 to provide all inmates with access to an equal number of prayer oils. Nevertheless, plaintiff's equal protection claim fails because he has not produced evidence sufficient to raise a genuine issue of material fact as to the motivations of any of the defendants; *i.e.,* there is no evidence that any of the defendants acted with intent to discriminate when they denied plaintiff's request for access to prayer oils that were not listed in the DOC Religious Property Matrix for NOI Muslims. Accordingly, the defendants' motion for summary judgment on this claim should be GRANTED.

2.     *Plaintiff Fails to State a Claim Under the Establishment Clause*

To the extent that plaintiff is arguing that the unequal treatment afforded NOI Muslims for religious events and access to prayer oils under DOC Policy Directive 560.210 violated the Establishment Clause, the Court finds that this claim also fails. Specifically, the Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion." The U.S. Supreme Court has held that the "clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). However, the U.S. Supreme Court has also "long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *Hobbie v. Unemployment Appeals Com'n of Fla.*, 480 U.S. 136, 144-45 (1987). In other words, although

the government must avoid partiality to any one group, "it may deviate from absolute rigidity to accommodate the religious practices of each group." *Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239, 1244 (9th Cir. 1981).

DOC Policy 560.210 does not advance a particular religion, but provides for religious freedom of all offenders. Here, plaintiff has not provided any evidence that the defendants in this case have advanced any other faith, such as Christians, Native Americans, Sunni Muslims, or Wiccans, over NOI. At most, the evidence shows that MCC has attempted to accommodate the unique religious practices and celebrations of different religions. Without more, the fact that adherents of other faiths may have been allotted more time for a particular religious celebration or granted access to a larger selection of prayer oils does not violate the Establishment Clause. Accordingly, the defendant's motion for summary judgment on this claim should be GRANTED.

F.    Defendants Are Entitled to Qualified Immunity

Assuming without deciding that plaintiff has alleged sufficient facts to establish that the defendants' denial of a Halal diet from November – December 2009 violated plaintiff's rights under the First Amendment, the defendants are entitled to qualified immunity.[6] Dkt. 6 at 3. Specifically, defendants are entitled to summary judgment in their favor for plaintiff's § 1983 claim for monetary relief against the defendants in their official capacities, because the Eleventh Amendment bars citizens from bringing lawsuits against states in federal courts. *See Welch v. Texas Dept. of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). If a suit seeks damages against a state official

---

[6] The historical facts of what the defendants knew or did with respect to denying plaintiff a Halal diet are undisputed. Thus, the Court can grant the defendants summary judgment on the issue of qualified immunity. *See Sinaloa Lake Owners Assn. v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995) (providing that "[i]f there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did," such questions of fact are for the jury to determine, and consequently, summary judgment on the issue of qualified immunity cannot be granted).

in his official capacity, the Eleventh Amendment bars the suit against the officer because the state is the real party in interest.  *See Quern v. Jordan*, 440 U.S. 332, 338-40 (1979).  As the DOC is a state entity, the Eleventh Amendment bars plaintiff's recovery of monetary damages against the defendants, as state employees, in their official capacity.[7]

The defense of qualified immunity also protects government officials from liability for civil damages in their personal capacity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A court considering a claim of qualified immunity must determine (1) whether the facts shown "make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct," such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815-16 (2009) (overruling its prior holding, in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), that courts had to proceed through the two-step inquiry sequentially).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

There can be no doubt that the right of free exercise of religion is clearly established.  However, the U.S. Supreme Court has made clear that the test of "clearly established law" is not to be applied at this level of generality for the purpose of a qualified immunity analysis.  Rather, the inquiry of whether a right was clearly established "must be undertaken in light of the specific

---

[7] Although the immunity conferred by the Eleventh Amendment is subject to certain exceptions, those exceptions do not salvage plaintiff's monetary claims.  Specifically, under *Ex parte Young*, 209 U.S. 123, 155-56 (1908), plaintiff would be free to pursue prospective claims against the defendants under § 1983.  As discussed above, however, plaintiff did not request injunctive relief in this case, and his claim for declaratory relief became moot when he was released from prison.

context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. In order for a right to be clearly established, "[t]he contours of the right" must be sufficiently clear that a reasonable official would understand that his conduct violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Plaintiff's First Amendment claim essentially asserts a right to a Halal meal that also accommodates plaintiff's therapeutic dietary needs. Plaintiff has failed, however, to establish that this right is clearly established law. The issue has not been squarely considered by the Ninth Circuit, and the Court is satisfied that a reasonable prison official could have concluded that in light of plaintiff's peanut allergy, plaintiff was ineligible to receive a Halal meal because it would have endangered plaintiff's health. *See Saucier*, 533 U.S. at 194-95 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted."). Accordingly, to the extent that the defendants could be found liable in their personal capacities for violating the First Amendment, they are entitled to qualified immunity.

V.     CONCLUSION

For the reasons discussed above, the Court recommends that the plaintiff's motion, Dkt. 24, be DENIED, the defendants' motion, Dkt. 31, be GRANTED, and this case be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 17th day of June, 2011.

*James P. Donohue*

_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 35